IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| Jesus Pacheco | § | |
| | § | |
| Plaintiff | § | |
| | § | C.A. NO. 7:14-cv-00073 |
| v. | § | |
| | § | |
| Grand Isle Shipyard, Inc. and | § | |
| Offshore Marine Contractors, Inc. | § | |
| | § | |
| Defendants | § | |

## JOINT PRETRIAL ORDER

1.  **Appearance of Counsel**

    **Counsel for Pacheco**

    Cory D. Itkin
    Noah M. Wexler
    Kelly M. Woods
    ARNOLD & ITKIN LLP
    6009 Memorial Drive
    Houston, Texas 77007
    Telephone: (713) 222-3800
    Facsimile: (713) 222-3850

    and

    David N. Calvillo
    CALVILLO LAW FIRM, PLLC
    Rio Grande Valley Office
    6316 N. 10th Street
    Building A. Suite 103
    McAllen, Texas 78504-3233
    956-664-1000
    956-664-1007

david@calvillolaw.com

**Counsel for Grand Isle Shipyard, Inc.**

Robert S. Reich, T.A.
Reich, Album & Plunkett, L.L.C.
3850 N. Causeway Blvd, Suite 1000
Metairie, Louisiana 70002

**Counsel for Gray Insurance Company**

Robert S. Reich, T.A.
Reich, Album & Plunkett, L.L.C.
3850 N. Causeway Blvd, Suite 1000
Metairie, Louisiana 70002

**Counsel for Defendant Offshore Marine Contractors, Inc.**

Thomas R. Nork
Jeanie Tate Goodwin
Legge, Farrow, Kimmit, McGrath & Brown, L.L.P.
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: (713) 917-0888

Edmundo O. Ramirez
Pedro Diaz, IV
Ellis, Koeneke & Ramirez, L.L.P.
1101 Chicago Avenue
McAllen, Texas 78504
Telephone: (956) 682-2440

2.   <u>Statement of the Case</u>

**Pacheco**

This is a serious maritime personal injury case where Plaintiff Jesus Pacheco

sustained devastating injuries to his neck and back during a basket transfer from a

boat to an oil rig. The incident occurred on or about September 17, 2011.  During the transfer, the basket went into a free fall causing the cable to jerk Plaintiff forcefully.  As a result of the incident, Pacheco is unlikely to ever return to any type of work that requires physical labor.

**Defendant Offshore Marine Contractors, Inc.**

On September 17, 2011, while in the course of his work as an offshore scaffold builder, Plaintiff was transferring by personnel basket from a vessel to a platform.  The personnel basket transfer was being run by OMC from its liftboat, the KATHRYN EYMARD.  The incident happened as the OMC crane operator aboard the KATHRYN EYMARD lifted the personnel basket from the deck of the vessel SUN TRAE.  The SUN TRAE is owned by Y&S Marine, Inc.  During the lift, the basket suddenly dropped or jerked.  Plaintiff claims injuries as a result of that incident.

3.   <u>**Jurisdiction**</u>

**Pacheco**

The Court has subject matter jurisdiction in this matter pursuant to the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §1331 *et seq*.  Under OCSLA, the law of the adjacent state is adopted as surrogate federal law to the extent that it is not inconsistent with other federal laws and regulations.  In the present lawsuit, the platform and vessel in question were located off the coast of Texas.

Personal jurisdiction is not contested.

**Defendant Offshore Marine Contractors, Inc.**

The Court has multiple bases of subject matter jurisdiction over this action. First, the Court has diversity jurisdiction.  28 U.S.C. §1332(a); *Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899-900 (9th Cir. 2006). Plaintiff is a citizen of Texas; OMC is a citizen of Louisiana.  Further, the amount in controversy exceeds $75,000, excluding interest and costs. 28 U.S.C. §1332(a); *Andrews v. E.I. du Pont de Nemours & Co.*, 447 F.3d 510, 514-15 (7th Cir. 2006). Plaintiff's First Amended Petition states:  "Plaintiff seeks monetary relief over $1 million."  Pl.'s First Amd. Pet at ¶ 11.

Second, this Court has original jurisdiction of this lawsuit in admiralty. Plaintiff has alleged personal injuries occurring on a vessel on the navigable waters of the United States.

Alternatively, the court has original jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OCSLA").  This Court has original jurisdiction over cases and controversies arising out of or in connection with activities occurring on the Outer Continental Shelf ("OCS") pursuant to 43 U.S.C. § 1301, *et seq*.  Shell is the owner of certain federal mineral leases located on the OCS off the coast of Louisiana.  The Chevron MP41 platform (which operations entail the extraction of mineral resources form beneath the seabed) is located on the OCS off the coast of

Louisiana.  OMC provided the L/B KATHRYN EYMARD to assist Chevron with its oil and gas exploration/production.  OMC's KATHRYN EYMARD is a liftboat which was jacked up on location next to Chevron's platform.  The legs of the L/B KATHRYN EYMARD extend downward through the water into the seabed. Accordingly, the KATHRYN EYMARD is a proper OCSLA situs for the purpose of this tort action.  Moreover, the Plaintiff's employment as a scaffold builder who was assigned to the Chevron MP41 platform was directly related to the support needed for the development of minerals or other natural resources on the OCS. Furthermore, it is clear that but for his employment, the Plaintiff would not have been involved in the incident forming the basis of this lawsuit—that is, he would not have been transferring via the KATHRYN EYMARD's personnel basket from a support vessel to the Chevron MP41 platform.  Hence, this case raises federal question claims under the OCSLA, 43 U.S.C. § 1301, *et seq*., which applies to Plaintiff's claims against OMC.

This defendant does not contest personal jurisdiction.

**4.**   **Motions**

**Pacheco**

1.     Motion to Exclude Untimely Produced Crane Inspection Documentation, Video and Photograph (Doc. 33)

**Defendant Offshore Marine Contractors, Inc.**

1.     Motion to Designate Responsible Third Party (Doc. 31)

5.    **The Parties' Contentions**

**Pacheco's Contentions:**

1.    Pacheco suffered severe injury during a basket transfer from the KATHRYN EYMARD to an offshore platform by a crane owned and operated by OMC.

2.    OMC knew or should have known that cranes and material handling equipment should be properly maintained in safe working order.

3.    OMC knew or should have known that crane operators should operate cranes in a safe manner.

4.    OMC failed to ensure that its crane was safe and fit for service.

5.    OMC failed to ensure that the crane operator was properly trained.

6.    OMC failed to ensure that the crane operator operated the crane in a safe manner.

7.    OMC failed to ensure that the crane was properly maintained and safe for operation.

8.    OMC failed to ensure the operator was properly trained and fit to transfer personnel and safely operate the crane during the basket transfer in question.

9.    OMC failed to properly inspect the crane.

10.    OMC failed to properly maintain the crane.

11.     OMC failed to properly supervise its crew and employees.

12.     OMC failed to provide adequate safety equipment.

13.     OMC failed to provide a safe working environment.

14.     Pacheco suffered severe injuries to his body, which resulted in physical pain, physical impairment, discomfort, mental anguish, and distress.

15.     In all reasonable probability, Pacheco's physical pain, physical impairment, and mental anguish will continue indefinitely.

16.     Pacheco has also suffered a loss of earnings in the past as well as a loss of future earning capacity.

17.     Pacheco has incurred and will incur pharmaceutical and medical expenses in connection with his injuries.

**Defendant Grand Isle Shipyard, Inc.'s Contentions:**

Plaintiff, Jesus Pacheco was employed by Intervenor, Grand Isle Shipyard, Inc. (hereinafter referred to as "GIS"), as a scaffold builder working aboard stationary platforms affixed to the Outer Continental Shelf of the Gulf of Mexico. As such, his claims are properly brought under the Outer Continental Shelf Lands Act and plaintiff was paid benefits under the Longshore and Harbor Workers Claims Act (hereinafter referred to as the "LHWCA").

Under the applicable law, Intervenors are subrogated legally to the rights of the plaintiff for all amounts paid by Intervenors to, and on behalf of, plaintiff and also for any additional amounts which Intervenors may be presently obligated or might in the future become obligated to pay under the workers' compensation policy issued by Gray Insurance Company (hereinafter referred to as "Gray") to GIS.  GIS and Gray, are also subrogated equitably and/or contractually to the rights of the plaintiff for all amounts paid by Intervenors to, and on behalf of, plaintiff and also for any additional amounts which Intervenors may be presently obligated or might become obligated to pay under their workers' compensation policy.

GIS, as employer of the plaintiff, as additional subrogee and as co-owner of the rights of the plaintiff, is entitled to intervene herein for reimbursement of all those amounts paid to on behalf of plaintiff in excess of the coverages provided by Gray, out of any damages or recovery, which may be awarded to the plaintiff and against OMC, together with legal interest from the date of judicial demand, until paid, and any and all expenses related to this matter.

**Gray Insurance Company Contentions:**

Intevenor, Gray issued a policy of workers' compensation insurance which provided benefits under the Longshore and Harbor Workers Compensation Act to plaintiff's employer, GIS.

As a result of the injuries allegedly sustained by plaintiff, Gray has paid to, or on behalf of, plaintiff, benefits and expenses pursuant to the LHWCA.   In total, plaintiff has received compensation benefits in the amount of $52,872.16 and medical benefits in the amount of $14,910.04 from Gray, pursuant to the LHWCA and under Intervenors' insurance policy. In total, plaintiff has received $67,782.20 in longshore benefits related to his alleged injury.

Gray, as the Longshore and Harbor Workers Compensation insurer, as subrogee and co-owners of the rights of the plaintiff, is entitled to intervene herein for a first dollar priority reimbursement of all amounts paid to, or on behalf of, plaintiff out of any damages or recovery, which may be awarded to the plaintiff, and against OMC, together with legal interest from the date of judicial demand, until paid, and any and all expenses related to this matter.

**Defendant Offshore Marine Contractors, Inc.'s Contentions:**

1.    At the time of the incident, Pacheco was a passenger aboard the L/B KATHRYN EYMARD.

2.    During the incident, the personnel basket dropped about three to four inches.

3.    The personnel basket dropped because the D-ring on the personnel basket was improperly side-loaded before making the lift, allowing the ring and thimble to straighten out and cause the personnel basket to

drop.

4.    The Y&S Marine, Inc. riggers aboard the vessel SUN TRAE had the responsibility of checking the rigging before signaling for the lift.

5.    Y&S Marine, Inc. failed to ensure that its riggers were properly trained and fit to transfer personnel via basket transfer.

6.    Riggers for Y&S Marine, Inc. failed to properly inspect the rigging of the personnel basket before allowing Pacheco to board.

7.    Although trained regarding the proper procedures for personnel basket transfers, Pacheco failed to check the rigging before boarding the personnel basket.

8.    Pacheco had a pre-existing injury to his neck at the exact same levels as the injury he is claiming now as a result of the incident.

9.    OMC did not fail to supervise its crew.

10.    OMC did not fail to properly train its employees.

11.    OMC did not fail to provide adequate safety equipment.

12.    OMC did not fail to provide a safe work environment.

13.    OMC did not fail to inspect the vessel and/or its equipment.

14.    OMC did not operate the vessel with an inadequate crew.

15.    OMC did not fail to maintain the vessel.

16.    OMC is not vicariously liable for its employees' negligence because

its employees were not negligent.

17.    OMC did not violate any applicable Coast Guard, OSHA, and/or
       BSEE rules.

**6.    Admissions of Fact**

1.    OMC owned and operated the KATHRYN EYMARD on the date of
      the incident.

2.    OMC owned and operated the crane involved in the incident on the
      date of the incident.

3.    The crane operator at the time of the incident was an employee of
      OMC.

4.    Pacheco was employed by Grand Isle Shipyard, Inc. as a scaffold
      builder on the date of the incident.

5.    The crane used to transport Pacheco at the time of the alleged incident
      did not have a camera pointed at the crane's winch.

6.    A sheave of the crane in question was found to be in need of
      replacement following the incident and was replaced.

7.    As of February 5, 2015, Intervenors, Gray and GIS, have paid to or on
      behalf of plaintiff $52,872.16 in compensation benefits and
      $15,669.60 in reasonable and necessary medical benefits pursuant to

the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, for a total of $68,541.76.

8.  Intervenors, Gray and GIS, are entitled to reimbursement allowed by the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, for the foregoing amounts paid to plaintiff, as well as a credit for any future benefits that intervenors and/or their insurers may be obligated to pay to or on behalf of plaintiff against any other proceeds received by plaintiff by way of settlement or judgment or resolution of this matter.

**7.**   **Contested Issues of Fact**

1.  Whether OMC was negligent, and if so whether that negligence was the cause, or a contributing cause, of any injury to Pacheco.

2.  The extent of Pacheco's injuries

3.  The extent of Pacheco's damages.

4.  Whether the crane being operated by OMC at the time of the incident was negligently maintained.

5.  Whether the crane being operated by OMC at the time of the incident was negligently inspected.

6.  Whether the basket that Pacheco was being transferred in by the crane operated by OMC violently jerked during the transfer.

7. Whether the basket that Pacheco was being transferred in by the crane operated by OMC had a free fall during the transfer.

8. Whether the violent jerk and/or free fall of the basket that Pacheco was being transferred in caused, or was a contributing cause, to any injury to Pacheco.

9. Whether Pacheco was trained regarding the proper procedures for personnel basket transfers.

10. Whether OMC safely landed the personnel basket onto the vessel SUN TRAE just before the incident.

11. Whether the D-Ring on the personnel basket carrying Pacheco was improperly side-loaded before making lifts, allowing the ring and thimble to straighten out and cause the personnel basket to violently jerk.

12. Whether the cable of the crane carrying the personnel basket where Pacheco was a passenger improperly piled onto one side of the cable's winch, causing the cable to stack up and then violently slip down, resulting in free fall or violent jerking of the personnel basket.

13. Whether the sheaves of the crane were worn down to the point of being dangerous.

**Defendant Grand Isle Shipyards, Inc.'s Contested Issues of Fact:**

1.    Whether plaintiff was a Jones Act Seaman at the time of the incidents at issue in this litigation.

2.    Whether plaintiff fraudulently plead that he was Jones Act Seaman

3.    Whether this case should have been removable subject to plaintiffs' fraudulent claim that he was a Jones Act Seaman.

**Defendant Offshore Marine Contractors, Inc.'s Contested Issues of Fact:**

1.    Whether Y&S Marine, Inc. was negligent, and if so whether that negligence was the cause, or a contributing cause, of any injury to Pacheco.

2.    Whether Pacheco was negligent, and if so whether that negligence was the cause, or a contributing cause, of any injury to Pacheco.

3.    Whether Y&S Marine, Inc. owned and operated the SUN TRAE on the date of the incident.

4.    Whether Y&S Marine, Inc. failed to ensure that its riggers were properly trained and fit to transfer personnel via basket transfer.

5.    Whether the riggers for Y&S Marine, Inc. failed to properly inspect the rigging of the personnel basket before allowing Pacheco to board.

6.    The distance of the drop of the personnel basket.

7.    The reason the personnel basket dropped at the time of the incident.

8.      Whether Pacheco failed to check the rigging before boarding the personnel basket.

9.      Whether Pacheco had a pre-existing injury to his neck at the exact same levels as the injury he is claiming now as a result of the incident.

**8.      Agreed Propositions of Law**

1.      OMC is vicariously liable for any negligence of its employees.

**9.      Contested Issues of Law**

1.      This case is governed by the Outer Continental Shelf Lands Act and, as such, Texas common law on negligence and gross negligence governs this lawsuit as to liability and damages.

2.      Whether OMC was negligent, and if so whether that negligence was the cause, or a contributing cause, of any injury to Jesus Pacheco.

3.      Whether OMC was grossly negligent, and if so whether that gross negligence the cause, or a contributing cause, of any injury to Jesus Pacheco.

**Defendant Offshore Marine Contractors, Inc.'s Contested Issues of Law:**

1.      This case is governed by federal maritime and admiralty law. 28 U.S.C. § 1333; 46 U.S.C. §30101.

2.     Maritime law applies principals of comparative fault.  *United States v. Reliable Transfer Co.*, 421 U.S. 397 (1975).

3.     Maritime law must maintain its uniformity and it preempts state law when it is contradictory to maritime law's purpose.  *J. Ray McDermott & Co., Inc. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir.) (*en banc*), *cert. denied*, 409 U.S. 948  (1972). *IMTT-Gretna v. Robert E. Lee*, 993 F.2d 1193, 1995 (5th Cir. 1993)

4.     The elements of a maritime negligence action are essentially the same as that of a land based negligence claim. 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law*, 110 (4th ed. 2004).

5.     To establish maritime negligence, a plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.  *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).

6.     A vessel operator owes visitors aboard its vessel a duty of reasonable care under the circumstances to not negligently injure them. *Kermerac v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630-632 (1959).

7.    Damages under admiralty must be established within a reasonable
      certainty. *Domar Ocean Transportation, Ltd. v. Independent Refining
      Co.*, 783 F.2d 1185 (5th Cir. 1986).

8.    Whether Plaintiff has a viable claim for unseaworthiness under the
      general maritime law.  The duty of seaworthiness is a duty owed only
      to seamen.  Other persons aboard a vessel, including passengers and
      visitors, are not seamen and cannot claim the benefit of the
      seaworthiness warranty.  *Kermarec v. Compagnie Generale
      Transatlantique*, 358 U.S. 625 (1959).

9.    Whether Plaintiff has a viable claim for gross negligence under the
      general maritime law.  *Miles v. Apex Marine Corp.*, 498 U.S. 19
      (1990).

10.   Whether Y&S Marine, Inc. was negligent, and if so whether that
      negligence was the cause, or a contributing cause, of any injury to
      Pacheco.

11.   Whether Pacheco was negligent, and if so whether that negligence
      was the cause, or a contributing cause, of any injury to Pacheco.

10. **Exhibits**

**Pacheco**

1.   Pacheco is attaching two copies of his Exhibit List to this Pretrial Order and will make such exhibits available in accordance with the Court's procedures.

**Defendant Grand Isle Shipyard, Inc.**

1.   Gray Insurance Company records of payment of compensation and medical benefits to Jesus Pacheco;

2.   Joint Stipulation executed by plaintiff's counsel and counsel for OMC stating that Intervenors are entitled to reimbursement of all compensation and medical benefits paid to, or on behalf of plaintiff;

3.   Plaintiff's Executed LS-201 & LS-203

4.   Unopposed Motion to File Petition of Intervention and Petition for Intervention

5.   Order Granting Unopposed Motion to File Petition for Intervention

**Defendant Offshore Marine Contractors, Inc.**

Defendant attaches hereto two copies of its Exhibit List and will make such exhibits available in accordance with the Court's procedures.

11.  **Witnesses**

**Pacheco's Witnesses**

Pacheco may call the following witnesses to testify at trial:

1.      Jesus Pacheco
        c/o Jason A. Itkin
        Arnold & Itkin LLP
        6009 Memorial Drive
        Houston, TX 77007
        (713) 222-3800
        *Mr. Pacheco is the Plaintiff in the above numbered case.  He will testify regarding the incident made the basis of this suit, liability, damages, and all other relevant matters within his personal knowledge.*

2.      Diana Pacheco
        c/o Jason A. Itkin
        Arnold & Itkin LLP
        6009 Memorial Drive
        Houston, TX 77007
        (713) 222-3800
        *Pacheco's wife who has knowledge of his injuries, medical treatment and quality of life before and after the incident.*

3.      Grand Isle Shipyard, Inc.
        c/o Robert S. Reich, Esq.
        Reich, Album & Plunkett, L.L.C.
        Two Lakeway Center, Suite 1000
        3850 North Causeway Blvd.
        Metairie, LA  70002
        *Defendant has knowledge of the incident as well as Pacheco's injuries.*

4.      Offshore Marine Contractors, Inc.
        Anthony (Tony) Smith, Crane Operator
        Geoff Moore, Crewmember
        Marquis Person, Crewmember
        Bashawn Steward, Crewmember

Jason Johnson, Crewmember
George Benette, Crewmember
Jason Johnson, HSE Manager
Kurt Luwisch, former operations manager
Mitch Orgeron, current HSE manager
c/o Thomas R. Nork
Legge Farrow
6363 Woodway, Suite 400
Houston, TX 77057
*Defendant has knowledge of the incident as well as Pacheco's injuries, as do the crewmembers and employees identified herein.*

5.    Kenneth G. McCoin, Ph.D., C.F.A.
7670 Woodway, Suite 171
Houston, Texas 77063
(713) 626-0144
*Dr. McCoin will testify regarding Pacheco's damages. In particular, he will assist in the calculation of the Pacheco's damages using accounting/economic principles. Dr. McCoin holds a PhD in economics from the University of Houston. He has served as an adjunct professor in economics at Houston Baptist University and guest lectured at the University of Houston. On balance, he has over 30 years of experience in the field of economics, and he has testified in numerous cases throughout his career.*

7.    Dr. Joe Gonzales
Texas Physical Medicine & Rehabilitation Institute
2833 Babcock Road, Suite 110
San Antonio, Texas 78229
(210) 692-2000
*Dr. Gonzalez may testify about Pacheco's care, treatment in the past, diagnosis, prognosis, causation, physical restrictions, reasonable costs and needs for medical care in the past and future, and the need and types of future treatment Mr. Pacheco will incur over his lifetime. Dr. Gonzales is a medical expert who holds multiple board certifications and is a certified life care planner and has practiced medicine in Texas since 1985. Dr. Gonzalez is a licensed physician in the State of Texas; he is certified by the American Academy of Physical Medicine & Rehabilitation, the American Board of Pain Medicine, and the American College of Occupational &*

-20-

*Environmental Medicine. Dr. Gonzalez is a Diplomat of the American Academy of Pain Management, has been a Designated Physician of the Texas Workers' Compensation Commission, and is a Certified Life Care Planner as designated by the Commission on Health Care Certification.  He possesses extraordinary expertise and knowledge in his respective area.*

8.    Jack T. Madeley
      Madeley Safety Engineering Consultants
      2700 Earl Rudder Frwy S., Suite 2700
      College Station, TX 77845
      (979) 693-2041
      *Mr. Madeley will testify about all aspects of liability.  Mr. Madeley will base his opinion upon his educational background, training, experience and work on this case. Mr. Madeley is a licensed Professional Engineer and technical consultant in the fields of industrial engineering, safety engineering, industrial safety engineering, product safety engineering, and human factors engineering.  Mr. Madeley holds a Bachelor of Science degree in Industrial Engineering and a Master of Science degree in Safety Engineering, both from Texas A&M University.  Mr. Madeley is board certified as a Certified Safety Professional (by examination) by the Board of Certified Safety Professionals of the Americas.  He has evaluated designs, failures, and accidents for over 30 years and routinely forms opinions pertaining to liability issues.*

9.    Any past or present medical providers of Pacheco
      *Past and present medical providers of Pacheco possess expertise and knowledge in their respective area. Specifically, they may testify about care, treatment, diagnosis, prognosis, causation, physical restrictions, reasonable costs for medical care in the past and future, and the need, if any for future treatment.*

10.   Any witnesses listed by any other party

11.   Any witnesses necessary to authenticate any document

12.   Any witnesses identified during the course of discovery

13.   Any witnesses necessary to impeach the credibility of another witness

If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

### Defendant Grand Isle Shipyard, Inc.

1. Robert Wallace
   *The Gray Insurance Company*
   Portway Plaza Office Bldg.
   1717 East Loop, Suite 333
   Houston, Texas 77029

   Mr. Wallace may testify regarding compensation and medical payments made to claimant

2. Jesus Pacheco (on cross-examination);

3. A representative of Grand Isle Shipyard, Inc., who may testify that claimant spent 100% of his time while employed with Grand Isle Shipyard, Inc., working aboard fixed platforms and that claimant's alleged injuries predate those at issue in this proceeding;

4. If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as

   they are known; this does not apply to rebuttal or impeachment witnesses.

**Defendant Offshore Marine Contractors, Inc.**

OMC may call the following witnesses:

    **1.**    **Anthony (Tony) Smith**
         Offshore Marine Contractors, Inc.
         133 West 113th Street
         Cut Off, Louisiana 70345

         Mr. Smith was operating the crane at the time of the incident. He will testify regarding the incident, his subsequent investigation, and his training and experience.

    **2.**    **Mitch Orgeron**
         Offshore Marine Contractors, Inc.
         133 West 113th Street
         Cut Off, Louisiana 70345

         Mr. Orgeron is the HSE Manager for OMC.  He will testify regarding the incident, his subsequent investigation, and his training and experience.

    **3.**    **Kurt Luwisch**
         c/o Legge Farrow
         5151 San Felipe, Suite 400
         Houston, Texas 77057

         Mr. Luwisch is the former HSE Manager for OMC.  He will testify regarding the incident, his subsequent investigation, and his training and experience.

    **4.**    **Grand Isle Shipyard, Inc.**
         c/o Robert S. Reich, Esq.
         Reich, Album & Plunkett, L.L.C.
         Two Lakeway Center, Suite 1000
         3850 North Causeway Blvd.
         Metairie, LA  70002

         Defendant has knowledge of the incident as well as Pacheco's injuries and employment.

5.   **Donna Johnson, M.Ed., LPC, CRC, CCM, CDMS**
     801 Lipan
     Corpus Christi, Texas 78401

Ms. Johnson is a vocational counselor and rehabilitation expert. She will testify regarding the Plaintiff's vocational rehabilitation options and residual earning capacity. In this capacity, she may testify regarding vocational or rehabilitation evaluations, testing, and/or methodology of assessing Plaintiff's vocational rehabilitation status or residual earning capacity. She has conducted a vocational assessment of Plaintiff and will provide independent opinions relative to the Plaintiff's residual earning and functional capacity. She may conduct a labor market survey and otherwise analyze the labor market in Plaintiff's locale to identify suitable vocational or employment options. She has also analyzed Plaintiff's expert's life care plan and will testify regarding the costs of future medical care.

6.   **Dr. James Mandel, Ph.D., CPA**
     5115 Beech
     Bellaire, Texas 77401

Dr. Mandel is an economist. He will testify as to the Plaintiff's lost earnings, earning capacity, and benefits, past and future, if any, and may opine relative to the present value of any reasonable and necessary fees for future medical care and may offer rebuttal opinions to Plaintiff's expert's opinions. This witness will testify to his methodology and the functioning of the financial markets generally.

7.   **Gregory S. Goldsmith, M.D.**
     McAllen Orthopaedic Associates
     110 E. Savannah Ave., Bldg. B, Suite 101
     McAllen, Texas 78503

Dr. Goldsmith is an orthopedic surgeon. He will testify regarding all aspects of Plaintiff's medical history and status including but not limited to his pre-injury medical history and functional status/capacity, medical causation of any and all

conditions at issue in this case, indications for and propriety of treatments rendered, propriety and effectiveness of treatments and surgical techniques, necessity of past and future medical care, reasonable costs of any past or future medical care, and residual functional capacity and impairment, if any.

If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

**12.**   **Settlement**

The parties agree that all settlement efforts have been exhausted, that the case cannot be settled, and that it will have to be tried.

**13.**   **Trial**

      (a)   The parties estimate 4-5 days of evidence; and

      (b)   The parties do not foresee any logistical problems at this time.

**14.**   **Attachments**

**Pacheco**

1.   See attached Plaintiff's Proposed Voir Dire questions.

2.   See attached Plaintiff's Proposed Jury Instructions and Interrogatories.

3.   See attached Plaintiff's Exhibit List.

**Defendant Offshore Marine Contractors, Inc.**

1.   OMC's Proposed Voir Dire Questions.

2.   OMC's Proposed Jury Instructions and Interrogatories.

3.   OMC's Exhibit List.

**Defendant Grand Isle Shipyard, Inc. and Defendant Gray Insurance Company**

1.    Intervenors' Trial Exhibit List


Date: _____        _____
                                       RICARDO H. HINOJOSA
                                       CHIEF U.S. DISTRICT JUDGE

APPROVED:

ARNOLD & ITKIN LLP

    */s/ Noah M. Wexler*
By: _____
Jason A. Itkin
Attorney-in-charge
Texas Bar No. 24032461
Federal Bar No. 33053
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850
jitkin@arnolditkin.com

**OF COUNSEL:**

Cory D. Itkin
State Bar No. 24050808
Federal Bar No. 618119
Noah M. Wexler
State Bar No. 24060816
Federal Bar No. 916478
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850
citkin@arnolditkin.com
nwexler@arnolditkin.com

and

David N. Calvillo
State Bar No. 03673000
Federal Bar No. 11431
Calvillo Law Firm, PLLC
Rio Grande Valley Office

6316 N. 10th Street
Building A. Suite 103
McAllen, Texas 78504-3233
956-664-1000
956-664-1007
david@calvillolaw.com

**ATTORNEYS FOR PLAINTIFF**


      */s/ Robert S. Reich*

By: _____

**REICH, ALBUM & PLUNKETT, L.L.C.**

Robert S. Reich, T.A.
Attorney-in-charge
3850 N. Causeway Blvd, Suite 1000
Metairie, Louisiana 70002

**ATTORNEY FOR GRAND ISLE SHIPYARD, INC.**

      */s/ Thomas R. Nork*

By: _____

**LEGGE, FARROW, KIMMIT, MCGRATH & BROWN L.L.P.**

Thomas R. Nork
Attorney-in-charge
Fed. ID No.: 12690
Texas: 15078500
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone:  (713) 917-0888
Telefax:      (713) 953-9470
tnork@leggefarrow.com

**OF COUNSEL:**

Jeanie Tate Goodwin

Fed. ID No. 592456
TBN 24046949
Legge, Farrow, Kimmitt, McGrath & Brown, L.L.P.
 5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone:   (713) 917-0888
Telefax:       (713) 953-9470
 jgoodwin@leggefarrow.com

Edmundo O. Ramirez
Texas Bar ID:  16501420
Federal Bar ID:  8972
Pedro Diaz, IV
Texas Bar ID:  24073527
Federal Bar ID:  2182722
Ellis, Koeneke & Ramirez, L.L.P.
1101 Chicago Avenue
McAllen, Texas 78504
Telephone: (956) 682-2440
Facsimile:  (956) 682-2440
Eor@ekrattorneys.com
Pete@ekrattorneys.com

**ATTORNEYS FOR DEFENDANT**
**OFFSHORE MARINE CONTRACTORS, INC.**